# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | | |
|---|---|---|
| NOEL ROMERO DOYE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CV408-174 |
| | ) | |
| JASON COLVIN, *Sheriff Deputy*; | ) | |
| CAPTAIN DUNCAN, *Assistant Administrator*; NURSE PARKER; | ) | |
| LIEUTENANT BOYD; MR. FRANKS, | ) | |
| *Jail Administrator/Warden*; and | ) | |
| LIBERTY COUNTY SHERIFF DEPARTMENT, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

Noel Romero Doye, currently an inmate at Ware State Prison, in Waycross, Georgia, has filed a complaint pursuant to 42 U.S.C. § 1983 against several employees at the Liberty County Jail alleging several constitutional violations. (Doc. 1.)

## I. LEGAL FRAMEWORK

The Prison Litigation Reform Act requires the federal courts to

conduct early screening of all prisoner suits against governmental entities or officials for the purpose of identifying claims that are subject to immediate dismissal as frivolous, malicious, or legally insufficient. 28 U.S.C. § 1915A (courts must identify "cognizable claims" filed by prisoners or other detainees and dismiss claims which are frivolous, malicious, fail to state a claim for relief, or seek monetary relief from a defendant immune from such relief); see also 42 U.S.C. § 1997e(c)(2) (allowing dismissal on the same four standards provided by § 1915A as to any prisoner suit brought "with respect to prison conditions"). The Court will therefore examine Doye's complaint to determine whether he has stated a colorable claim for relief under § 1983.

## II. BACKGROUND

In December 2006, Doye was detained at the Liberty County Jail awaiting trial. (Doc. 1 at 5.) He alleges that during a routine clothing exchange, he was issued a pair of shorts that were too small for him. (Id.) When he asked for a larger pair, Deputy Colvin, who was monitoring the exchange, allegedly struck him on the back and told him "to move on." (Id.)

Doye turned to Colvin and explained the situation, telling him that there was no need for violence. (Id.) Doye then resumed pleading with the clothing exchange attendant for a larger pair of shorts, but Colvin once again struck Doye in the back, this time "telling him to go to his cell." (Id.) Doye again turned around to face Colvin and said "man, don't put your hands on me." (Id.) Colvin unholstered his taser and leveled it at Doye's face. (Id.) Doye turned away, and Colvin roughly escorted Doye to his cell with the taser aimed at his back. (Id.) Once they arrived, Doye alleges that Colvin forcefully shoved him into the cell, and when he turned around, Colvin fired the taser into his chest. (Id. at 6.) Doye states that he impulsively removed the taser's prongs from his chest, but Colvin stepped into the cell and began to strike Doye with the "end of the taser which is used as a stungun." (Id.) The two men struggled for a moment. Doye states that he managed to disarm Colvin in self-defense, but Colvin quickly backed out of the cell, unholstered his pepper spray, and aimed it at Doye. (Id.) Faced with the pepper spray, Doye turned around, stood with his face against the far wall of his cell, and repeatedly shouted "okay-okay, you got it man!" (Id.) Colvin allegedly ignored Doye's pleas, re-entered the cell,

grabbed him, turned him around, sprayed him in the face with the pepper spray, and threw him to the floor. (Id.) While on the floor, Colvin allegedly rained down punches, knees, and kicks upon Doye while Doye cried out "alright, man - my arm - my arm!" (Id.) Nearby inmates shouted warnings to Colvin regarding Doye's arm, because they were aware that his left arm and shoulder had recently been injured. (Id.) Doye ended up face down on the floor. (Id. at 6.) Colvin placed one of the cuffs around Doye's right wrist and then allegedly "yanked and pulled" at Doye's injured left arm as he locked the other cuff around Doye's left wrist.[1] (Id. at 6, 12.)

Due to the disturbance, several other correctional officers arrived, and Doye was removed from his cell. (Id.) He began screaming profanities, but he states that he did so out of "shock and disbelief of what had taken place, and [the] pain he was suffering." (Id.) Cpt. Duncan, one of the officers who had arrived in the hallway outside of Doye's cell, allegedly shoved Doye against the wall and instructed Doye to "shut-up" before he "smash[ed] [Doye's] face into the wall." (Id.) Doye claims that Duncan and Colvin then

---

[1] Apparently Doye resisted during the handcuffing, as he indicates that he "grew weak and was eventually overpowered by defendant Colvin's attempts to pull his arm up and behind him to get the other [left] handcuff on him." (Doc. 1 at 7.)

4

lifted Doye's handcuffed arms into the air behind him "with too much force," requiring Doye to bend forward to alleviate the painful pressure that this placed on his shoulders. (Id.) Duncan and Colvin brought Doye to another room, made him lie face down on the floor, and shackled his hands to his feet. (Id.) Doye claims that Duncan then "slapped him in the face and said 'this is the treatment you get when you're a smart-ass.'" (Id.) Duncan and Colvin allegedly left Doye in the room "as he hollered out and pleaded for some type of relief to be done about the pain, bleeding, lack of breath, and burning sensation of the pepper spray because of Duncan . . . refus[ed] to let Nurse Parker . . . treat [him]." (Id. at 8.)

A few minutes passed before Duncan returned with another officer. (Id.) After removing the chain connecting Doye's hands to his ankles, Duncan allegedly "picked him up from the floor and again pushed his arms up behind him with too much pressure[,] causing [him] to cry out in pain." (Id.) Duncan then hastily escorted Doye to a room with a restraining chair. (Id.) Doye tripped during the walk, but, rather than allowing Doye to recover his feet, Duncan and the other officer allegedly "pulled [him] by his arms up to the chair." (Id.) Before setting him on the chair, Duncan

5

allegedly threw Doye to the floor, straddled him, leaned down, called him a "fucking nigger," and smashed his head into the floor.[2] (Id. at 12-13.) Duncan then lifted Doye onto the restraining chair and strapped him down. (Id.)

Doye again requested medical assistance. (Id. at 8.) A short while later, he was taken to the jail's medical facilities where Nurse Parker flushed his eyes and face with water to ease the effects of the pepper spray and patched up the taser wounds and several other scratches and bruises he had accumulated over the course of the incident. (Id. at 8-9.) Doye complained to Parker of arm pain. She gave him pain medication but did not examine the arm, stating instead that she would have someone else come to examine it. (Id. at 9.) After the medical treatment, Doye was returned to the room where Duncan had earlier shackled his wrists to his ankles, and he was left there for about two hours to "cool off." (Id.) Upon his release from that room, Sgt. Edwards, another corrections officer, told Doye that Cpt. Duncan "would not put him in the hole if he promised not

---

[2] Lt. Boyd, another officer present at the scene, allegedly, did "nothing to stop or prevent defendant Duncan's onslaught." (Doc. 1 at 13.) It is not clear whether she was the officer that helped Duncan escort Doye to the restraining chair.

to cause any trouble." (Id.) Doye agreed and was returned to his unit. (Id.) But when Doye arrived at his cell, he noticed that his shoulder immobilizer was missing. (Id.) Doye was told that Duncan had taken it. (Id.) Duncan promised to return it, "but [Doye] never got it [back]." (Id. at 9-10.)

For several weeks after the incident, Doye complained to the medical staff about pain in his shoulder. (Id. at 10.) He alleges that he told Nurse Parker on several occasions of the pain, but she did not arrange for him to see a doctor for several weeks, when she got him an appointment with a physician at the Liberty Regional Medical Center. (Id. at 10-11.) The outside doctor notified him that his shoulder was healing incorrectly and a surgery would be needed to repair it. (Id. at 11.) On February 19, 2007, Doye had the surgery, and the surgeon recommended that he receive physical therapy. (Id.) Plaintiff's physical therapy did not begin until August 18, 2007, nearly six months after the surgery. (Id.) The therapy concluded after a month, but the therapist recommended more x-rays and further therapy. (Id. at 11-12.) Doye filed several medical complaints at the jail seeking further medical treatment, as he experienced pain and limited rotation. (Id.) He was not seen by another outside doctor until

October 17, 2007, and he was accompanied by Cpt. Duncan to the appointment. (Id. at 12.) The doctor first met with Duncan privately, and he then told Doye that they would wait a few weeks to see if Doye's symptoms subsided. (Id.) Doye believes that Duncan instructed the doctor to take this course of action, rather than pursuing more aggressive treatment. (Id.) On the next day, Doye was transferred to prison. (Id. at 13.)

## III. ANALYSIS

Doye first contends that Duncan and Colvin applied excessive force during the initial confrontation and that Boyd failed to protect him from Duncan.[3] (Id. at 13-15.) He next contends that Colvin, Duncan, and Nurse Parker were deliberately indifferent to his medical needs.[4] (Id. at 15-17.)

---

[3] Doye appears to have been a pretrial detainee during the events in question. The Fourteenth Amendment Due Process Clause, rather than the Eighth Amendment prohibition of cruel and unusual punishment, governs pretrial detainees, but "the standards under the Fourteenth Amendment are identical to those under the Eighth." Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007); see also Hamm v. DeKalb County, 774 F.2d 1567, 1572 (11th Cir. 1985).

[4] Doye actually raises a third claim as well, contending that Duncan verbally discriminated against him by using an inappropriate racial epithet during their initial confrontation. (Doc. 1 at 18.) An allegation of a run-of-the-mill racial slur or other verbal insult, however, is not cognizable under § 1983. Edwards v. Gilbert, 867 F.2d 1271, 1273 n. 1 (11th Cir.1989) ("a petitioner must allege more than that he has been

He believes that Warden Franks is liable for both constitutional violations.[5] (Id. at 13-17.) As relief for these alleged wrongs, Doye asks for damages "in the amount of $5,000,000, or an amount sufficient to compensate him for the pain and mental anguish he suffered." (Doc. 1 at 19.) He also asks for attorneys' fees, costs, and additional relief that the Court deems just and proper. (Id.)

A. **Excessive Force**

Doye alleges that Duncan and Colvin used excessive force against him

---

subjected to 'verbal taunts .... however distressing' in order to make a claim that jailers have violated their duty of protection or deprived the petitioner of his constitutional rights"); Keyes v. City of Albany, 594 F.Supp. 1147, 1155 (N.D.N.Y.1984) ("[T]he use of vile and abusive language, no matter how abhorrent or reprehensible, cannot form the basis for a § 1983 claim."); Robertson v. Piano City, 70 F.3d 21, 24 (5th Cir.1995) ("[M]ere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations."); Ivey v. Wilson, 832 F.2d 950, 955 (6th Cir.1987); Johnson v. Glick, 481 F.2d 1028, 1033 n. 7 (2d Cir.1973). Accordingly, this claim should be **DISMISSED** as an independent § 1983 claim. The Court notes, however, that Doye's allegations are still relevant to his excessive force claim.

[5] Doye also contends that the Sheriff's Department is liable for both alleged violations. A sheriff's department, however, is not an entity subject to suit. Lawal v. Fowler, 196 F. App'x 765, 768 (11th Cir. 2006) (upholding district court's decision that plaintiff failed to state a claim against the sheriff's department since "'sheriff's departments and police departments are not usually considered legal entities subject to suit'") (citing Dean v. Barber, 951 F.2d 1210, 1214 (11th Cir. 1992)); Lovelace v. DeKalb Cent. Prob., 144 F. App'x 793, 795 (11th Cir. 2005) (county police department not a legal entity subject to suit under § 1983); Grech v. Clayton County, 335 F.3d 1326, 1348 n.48 (11th Cir. 2003); Jackson v. Bulloch County Jail, 2008 WL 2437421, at *1 (S.D. Ga. June 16, 2008) (sheriff's department is not a proper legal entity subject to suit). Consequently, the Liberty County Sheriff's department should be **DISMISSED**.

during the initial encounter involving the tasing and restraining chair. In the excessive force context, the "core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992); Bozeman v. Orum, 422 F.3d 1265, 1271 (11th Cir. 2005). Here, Doye's allegations against Colvin and Duncan indicate that they maliciously and sadistically used force long after such force was necessary to maintain inmate discipline. Consequently, Doye states a claim against Colvin and Duncan. He similarly states a claim against Lt. Boyd, as "an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held personally liable for his nonfeasance." Skrtich v. Thornton, 280 F.3d 1295, 1301 (11th Cir. 2002) (citations omitted).

### B. Denial of Necessary Medical Care

Doye next raises two claims of denial of necessary medical care. He first contends that Cpt. Duncan was deliberately indifferent to his needs by denying him access to his shoulder immobilizer. (Doc. 1 at 16.) He also contends that Nurse Parker and Warden Franks were deliberately

indifferent to his medical needs by waiting two to three weeks to send him to an outside doctor and by significantly delaying his access to physical therapy. (Id. at 15-16.)

In Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court held that the Eighth Amendment's proscription against cruel and unusual punishment prevents prison personnel from subjecting an inmate to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 106. To establish deliberate indifference, it is not enough that prison medical personnel have been negligent in diagnosing or treating a prisoner's condition, since it is clear that "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106; Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991). "[I]t is obdurancy and wantonness, not inadvertence or error in good faith," that violates the Constitution in "supplying medical needs." Adams v. Poag, 61 F.3d 1537, 1543 (11th Cir. 1995) (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)). In fact, care provided to a prisoner need not be "perfect, the best obtainable, or even very good." Harris, 941 F.2d at 1510 (quoting Brown v. Beck, 481 F. Supp.

723, 726 (S.D. Ga. 1980)). The Supreme Court, articulating a more precise definition, has stated that deliberate indifference requires the same mental state as criminal recklessness: "The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994).

Here, Doye's claim against Cpt. Duncan survives review, as he alleges that Duncan was aware of the shoulder injury, which the Court presumes to have been an objectively serious medical need, yet repeatedly denied him access his shoulder immobilizer.[6] Doye's claims against Nurse Parker and Warden Franks for the alleged delays in treatment, however, do not survive.

A delay in access to medical care that is "tantamount to 'unnecessary and wanton infliction of pain,'" may constitute deliberate indifference to a

---

[6] Doye also contends that Colvin and Duncan were deliberately indifferent to his medical needs through their use of excessive force against him. (Doc. 1 at 16.) His allegations show that the use of force exacerbated a pre-existing, already treated, injury. Although the allegations may be relevant in determining whether the excessive force claim could support an award of punitive damages, they do not state an independent claim for a denial of necessary medical care, as Doye does not allege that the officer's use of force acted to deny him necessary medical treatment for any serious medical need at the time of the incident. Accordingly, the Court is of the opinion that this allegation is subsumed in his excessive force claim and need not be revisited at this time.

prisoner's serious medical needs. Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990) (per curiam) (quoting Estelle, 429 U.S. at 104). Some delay in rendering medical care may be tolerable, depending on the nature of the medical need and the reason for the delay. Harris v. Coweta County, 21 F.3d 388, 393–94 (11th Cir. 1994). Here, Doye has not shown any delay in treatment that was "tantamount to unnecessary and wanton infliction of pain." After the initial incident with Colvin and Duncan, Nurse Parker promptly treated Doye's arm pain by providing him with pain killers. (Doc. 1 at 9.) Doye's admission that he received treatment severely undercuts his assertion that the two to three week delay in arranging an appointment with an outside physician—which can be a difficult thing to schedule, considering the multiple security issues surrounding such a visit, not to mention many doctors' busy schedules—was unnecessary or wanton or that it caused him to suffer any unnecessary pain. Indeed, after parsing the complaint, it is apparent that Doye believes that his condition mandated emergency treatment by a physician, not the care provided by Nurse Parker. Rather than asserting a true delay-in-treatment claim, he is actually asserting that he was denied the treatment of his choice, and such

a claim cannot survive, as a prisoner's mere disagreement with a jail's medical personnel about the proper course of treatment does not entitle him to § 1983 relief. Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989). Additionally, even if Parker's treatment decisions amounted to negligence or malpractice, such claims do not amount to deliberate indifference under the Eighth Amendment. Estelle, 429 U.S. at 106; Campbell v. Sikes, 169 F.3d 1353, 1363-72 (11th Cir. 1999); Harris, 941 F.2d at 1505.

The several month delay in access to physical therapy presents a closer call. Doye states that the outside doctor recommended that he receive physical therapy within one or two months of the shoulder surgery. (Doc. 1 at 11.) Doye admits that he received the required surgery and remained in the medical area of the jail for three months thereafter, where he received continuing treatment for his shoulder. (Id. at 10.) After several months of "pain and discomfort," Doye finally started physical therapy on August 18, 2007, approximately six months after the surgery and three months after he was released from the jail's medical area. (Id. at 11.) While this delay would state a claim had Doye been entirely denied treatment, it

simply does not rise to the level of a wanton and unnecessary infliction of pain on the parts of Nurse Parker or Warden Franks in this case. There is no indication anywhere in the complaint that these defendants deliberately delayed post-surgery treatment or acted with callous disregard for Doye's medical condition. Indeed, they regularly provided care and treatment.[7] In sum, his claims against Nurse Parker and Warden Franks for delays in medical care fail to state claims for relief and should be dismissed.

C. **Vicarious Liability**

Finally, Doye contends that Warden Franks is liable for his subordinates' use of excessive force.[8] (Doc. 1 at 14 & 17.) Claims brought pursuant to § 1983 cannot be based upon theories of vicarious liability or respondeat superior. Polk County v. Dodson, 454 U.S. 312, 325 (1981); Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978). Rather, a plaintiff must demonstrate either that the supervisor directly participated in the

---

[7] Moreover, Doye presents a classic causation problem. He has not alleged any facts showing that either Nurse Parker or Warden Franks was actually responsible for the delay in seeing the outside physician or the several month delay in starting physical therapy. Instead, he alleges that Parker records the needs of inmates and sets appointments but that "Franks has final control over whether or not inmates are escorted from the County Jail" for medical treatment. (Doc. 1 at 17.)

[8] As noted above, Doye's medical claims failed to show that his treatment was unconstitutionally delayed, so it is unnecessary to determine whether Franks is liable for those alleged violations at this point in the inquiry.

alleged constitutional deprivation or that there is some other causal connection between his acts or omissions and the alleged constitutional deprivation. Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1998) (per curiam).

There are no allegations in the complaint that indicate that Franks directly participated in the incident with Colvin and Duncan. Absent direct participation in a constitutional violation, a causal connection may be established by showing that Franks implemented or allowed to continue an official policy or an unofficially adopted policy or custom under which the violation occurred. Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986); Fundiller v. Cooper City, 777 F.2d 1436, 1442 (11th Cir. 1985). That is, Doye must show that the Franks' knowledge amounted to deliberate indifference to the asserted harm or risk, in that his knowledge was "so pervasive that the refusal to prevent harm rises to the level of a custom or policy of depriving inmates of their constitutional rights." Tittle v. Jefferson County Comm'n, 10 F.3d 1535, 1541-42 (11th Cir. 1994) (Kravitch, J., concurring). Here, Doye alleges that Franks allowed an "unconstitutional policy or custom of officers and Liberty County Jail tasing

and beating inmates." He alleges that he witnessed several such encounters while detained in the jail. (Doc. 1 at 10-11.) Taking his allegations as true, Doye has stated a colorable claim for relief against Franks for the alleged use of excessive force.

## IV. CONCLUSION

For all of the reasons explained above, Doye's complaint should be **DISMISSED** as to Nurse Parker and the Liberty County Sheriff's Department. His claims of excessive force against Cpt. Duncan, Lt. Boyd, Deputy Colvin, and Warden Franks should survive review, as should his claim of denial of necessary medical care by Cpt. Duncan. Accordingly, the Clerk is hereby **DIRECTED** to deliver a copy of this Report and Recommendation along with Doye's complaint to the U.S. Marshal for service upon Cpt. Duncan, Lt. Boyd, Deputy Colvin, and Warden Franks.

**SO REPORTED AND RECOMMENDED** this  4th  day of December, 2008.

/s/ G R. SMITH
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA