# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | | |
|---|---|---|
| NOEL ROMERO DOYE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CV408-174 |
| | ) | |
| JASON COLVIN, *Sheriff's Deputy*; | ) | |
| CAPTAIN BRUCE DUNCAN, | ) | |
| *Assistant Administrator*; | ) | |
| LIEUTENANT LISA BOYD; and | ) | |
| DOUG FRANKS, *Jail Administrator*, | ) | |
| | ) | |
| Defendants.[1] | ) | |

## REPORT AND RECOMMENDATION

Before the Court is defendants' summary judgment motion in this 42 U.S.C. § 1983 case claiming excessive force and denial of necessary medical care. (Doc. 111.) The motion suffers from several defects: It is both untimely under the Court's scheduling order and attempts to circumvent Local Rule 56.1's requirement that such motions be accompanied by a separate statement of undisputed material facts. Nevertheless, the motion should be granted in part.

---

[1] In that Sheriff J. Don Martin has never been served, the Court has removed him from the caption of this case. All subsequent filings shall conform. However, the Court is giving plaintiff 14 days to attempt service upon him and, if successful, he will be reinstated as a defendant. *See* Part D, *infra*.

A.  **Untimeliness**

On October 27, 2010, the Court granted defendants' motion to amend the scheduling order to allow them until November 11, 2010 to file their motion for summary judgment. (Doc. 110 (order); doc. 109 (motion).) The motion, such as it is, was not filed until November 12, 2010, one day late. (Doc. 111.) Such an oversight may appear to be minor at first, but procedure has weighed heavily in this case.

Indeed, defendants have repeatedly insisted that plaintiff should be sanctioned and this case be dismissed for *his* perceived procedural missteps. Specifically, they twice moved to dismiss his complaint as a sanction for his failure to appear for a noticed deposition. (Docs. 68 and 100.) The Court granted the first motion (docs. 74 & 77), but the dismissal was ultimately reversed on appeal because it was unclear whether plaintiff timely received defendants' Fed. R. Civ. P. 30(b)(1) deposition notice. *Doye v. Colvin*, 378 F. App'x 926 (11th Cir. 2010). Despite that ruling, defendants again moved to dismiss for the same deposition refusal -- yet again failed to show proof that Doye had, in fact,

received their deposition notice. (Doc. 100.) The Court denied the renewed motion. (Doc. 103.)

Because what's sauce for the goose is sauce for the gander, it would be just to hold defendants, who are represented, to the same standards they sought to apply to Doye, who is not. For that matter, the Court could dismiss their motion on untimeliness grounds alone.[2] Nevertheless Doye has not raised the issue, and the Court is in a forgiving mood.

## B. LR 56.1

In their initial filing, defendants simply put plaintiff to his burden, arguing that he "cannot point to any evidence in the record to support his claims." (Doc. 111-1 at 2.) In their attached statement of material facts, they provide no facts or citations to the record but instead furnish only additional argument:

---

[2] It is well established that "[a] motion that is untimely pursuant to a duly entered . . . scheduling order may be denied on that ground alone." *Gallien v. Binkley*, 2008 WL 4916394 at *2 (S.D. Ga. Nov. 14, 2008) (quoting *Oakes v. Trs. of Columbia Univ.*, 1988 WL 132890 at * 3 (S.D.N.Y. Dec. 6, 1988)); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608-09 (9th Cir. 1992) (affirming district court's denial of leave to amend where motion filed after scheduling order cut off); *see also Dredge v. Kendrick*, 849 F.2d 1398 (11th Cir. 1988) (a summary judgment motion filed outside of the motions deadline need not be considered).

3

> At this time, defendants assert that there are no material facts in the record to preclude summary judgment. In particular, movants can meet their burden of presenting evidence showing there is no dispute of material fact "by showing that the nonmoving party has failed to present evidence in support of some element of [his] case on which [he] bears the ultimate burden." *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1281-82 (11th Cir. 1999). . . . "There is no requirement, however, 'that the moving part[ies] support [their] motions with affidavits or other similar materials *negating* the opponent's claim.'" *Graham*, 193 F.2d 1282 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

(Doc. 111-2 at 2 (emphasis in original).) Defendants waited until their *reply* brief, however, to supply new evidence, including an unsworn statement by Officer Colvin (doc. 121-1), along with Doye's deposition (doc. 122). This is problematic on several grounds.

It is a well-established principle of law that a party may not raise new issues or submit new facts in a reply brief. *E.g.*, *Fisher v. Ciba Specialty Chems.*, 238 F.R.D. 273, 311 n.82 (S.D. Ala. 2006). Problematic replies are not in and of themselves prejudicial, however, especially in courts such as this one operating under a liberal reply-brief practice. *See Podger v. Gulfstream Aerospace Corp.*, 212 F.R.D. 609, 609 (S.D. Ga. 2003). Doye, for that matter, has been free to address the new evidence in

a reply brief, and in fact he did. (Doc. 123.) In effect then, the Court simply treats defendants' reply as a new motion for summary judgment. Yet, that new motion is even more untimely than their first. It is essentially a new motion for summary judgment filed more than a month after the Court-ordered motions cutoff date.

Worse, it acts as an end run around Local Rule 56.1. That rule says that "[u]pon any motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, in addition to the brief, there shall be annexed to the motion a separate, short, and concise statement of the material facts as to which it is contended there exists no genuine issue to be tried as well as any conclusions of law thereof." S.D. Ga. LR 56.1. As noted above, defendants' Rule 56.1 statement was empty. The Court need not permit them to circumvent LR 56.1 by offering all of their facts by reply. But even if the Court overlooks defendants' misstep, they still have not shown that they are entitled to summary judgment as to the officers who were directly involved in the described incident.

## C. Summary judgment on the merits

Despite the motion's rather serious deficiencies, it succeeds in part under the summary judgment standard.[3] While Doye's claims against Colvin, Duncan, and Boyd survive, his claims against Franks should be dismissed.

---

[3] According to Fed. R. Civ. P. 56(a), "[a] party may move for summary judgment, identifying each claim or defense -- or the part of each claim of defense -- on which summary judgment is sought." The court presented with such a motion must grant it "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* A genuine dispute as to a material fact can only be found "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986) (quotation omitted). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-23; *see also* Fed. R. Civ. P. 56(c)(1). After the movant satisfies this requirement, the burden shifts to "the adverse party [who] must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 250 (quotation omitted). "[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247-48 (emphasis in original). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). And "[a]ll reasonable inferences arising from the undisputed facts should be made in favor of the nonmovant, but an inference based on speculation and conjecture is not reasonable." *Blackston v. Shook & Fletcher Insulation Co.,* 764 F.2d 1480, 1482 (11th Cir. 1985) (citation omitted).

Contrary to defendants' assertions, Doye *has* laid out 28 U.S.C. § 1746 "verified" facts in the record supporting his claims that defendants Colvin and Duncan used excessive force against him, that defendant Boyd failed to protect him, and that Duncan denied him necessary medical care. (Doc. 115 at 7 (Doye himself points out that he already tendered admissible evidence under penalty of perjury in his complaint).) A *pro se* plaintiff's § 1746-verified complaint is the equivalent of an affidavit and is considered competent evidence for summary judgment purposes where the complaint asserts non-conclusory allegations based on the plaintiff's personal knowledge. *Sammons v. Taylor*, 967 F.2d 1533, 1545 n. 5 (11th Cir. 1992); *Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986); *see Williams v. United States*, 314 F. App'x 253, 255-56 (11th Cir. 2009) ("In reviewing the district court's grant of summary judgment, we consider [plaintiff's] verified amended complaint, and the affidavits and other documentary evidence submitted by the parties, and view that evidence in the light most favorable to [plaintiff], the non-moving party."); *Murrell v. Bennett*, 615 F.2d 306, 310 n. 5 (5th Cir. 1980); *see also Hart v. Hairston*, 343 F.3d 762, 764 n.1, 765

7

(5th Cir. 2003); *Roberson v. Hayti Police Dep't*, 241 F.3d 992, 994 (8th Cir. 2001); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992).

Doye's complaint, as summarized by the Court in its initial Report and Recommendation, lays out his claims against Deputy Colvin, Captain Duncan, and Lieutenant Boyd:

> In December 2006, Doye was detained at the Liberty County Jail awaiting trial. (Doc. 1 at 5.) He alleges that during a routine clothing exchange, he was issued a pair of shorts that were too small for him. (*Id.*) When he asked for a larger pair, Deputy Colvin, who was monitoring the exchange, allegedly struck him on the back and told him "to move on." (*Id.*) Doye turned to Colvin and explained the situation, telling him that there was no need for violence. (*Id.*) Doye then resumed pleading with the clothing exchange attendant for a larger pair of shorts, but Colvin once again struck Doye in the back, this time "telling him to go to his cell." (*Id.*) Doye again turned around to face Colvin and said "man, don't put your hands on me." (*Id.*) Colvin unholstered his taser and leveled it at Doye's face. (*Id.*) Doye turned away, and Colvin roughly escorted Doye to his cell with the taser aimed at his back. (*Id.*) Once they arrived, Doye alleges that Colvin forcefully shoved him into the cell, and when he turned around, Colvin fired the taser into his chest. (*Id.* at 6.) Doye states that he impulsively removed the taser's prongs from his chest, but Colvin stepped into the cell and began to strike Doye with the "end of the taser which is used as a stungun." (*Id.*) The two men struggled for a moment. Doye states that he managed to disarm Colvin in self-defense, but Colvin quickly backed out of the cell, unholstered his pepper spray, and aimed it at Doye. (*Id.*) Faced with the pepper spray, Doye turned around, stood with his face against the far wall of his cell, and repeatedly shouted

8

"okay-okay, you got it man!" (*Id.*) Colvin allegedly ignored Doye's pleas, re-entered the cell, grabbed him, turned him around, sprayed him in the face with the pepper spray, and threw him to the floor. (*Id.*) While on the floor, Colvin allegedly rained down punches, knees, and kicks upon Doye while Doye cried out "alright, man-my arm-my arm!" (*Id.*) Nearby inmates shouted warnings to Colvin regarding Doye's arm, because they were aware that his left arm and shoulder had recently been injured....

Due to the disturbance, several other correctional officers arrived, and Doye was removed from his cell. (*Id.*) He began screaming profanities, but he states that he did so out of "shock and disbelief of what had taken place, and [the] pain he was suffering." (*Id.*) Cpt. Duncan, one of the officers who had arrived in the hallway outside of Doye's cell, allegedly shoved Doye against the wall and instructed Doye to "shut-up" before he "smash[ed] [Doye's] face into the wall." (*Id.*) Doye claims that Duncan and Colvin then lifted Doye's handcuffed arms into the air behind him "with too much force," requiring Doye to bend forward to alleviate the painful pressure that this placed on his shoulders. (*Id.*) Duncan and Colvin brought Doye to another room, made him lie face down on the floor, and shackled his hands to his feet. (*Id.*) Doye claims that Duncan then "slapped him in the face and said 'this is the treatment you get when you're a smart-ass.'" (*Id.*) Duncan and Colvin allegedly left Doye in the room "as he hollered out and pleaded for some type of relief to be done about the pain, bleeding, lack of breath, and burning sensation of the pepper spray because of Duncan ... refus[ed] to let Nurse Parker ... treat [him]." (*Id.* at 8.)

A few minutes passed before Duncan returned with another officer. (*Id.*) After removing the chain connecting Doye's hands to his ankles, Duncan allegedly "picked him up from the floor and again pushed his arms up behind him with too much pressure[,]

9

> causing [him] to cry out in pain." (*Id.*) Duncan then hastily escorted Doye to a room with a restraining chair. (*Id.*) Doye tripped during the walk, but, rather than allowing Doye to recover his feet, Duncan and the other officer allegedly "pulled [him] by his arms up to the chair." (*Id.*) Before setting him on the chair, Duncan allegedly threw Doye to the floor, straddled him, leaned down, called him a "fucking nigger," and smashed his head into the floor. (*Id.* at 12-13.) Duncan then lifted Doye onto the restraining chair and strapped him down. (*Id.*)
>
> Lt. Boyd, another officer present at the scene, allegedly, did "nothing to stop or prevent defendant Duncan's onslaught." (Doc. 1 at 13.)

(Doc. 6 at 2-8 (alterations in original), *reported at* 2008 WL 5749909.) Finally, when Doye arrived at his cell, he noticed that his medically prescribed shoulder immobilizer was missing. (*Id.*) Doye was told that Duncan had taken it. (*Id.*) He spoke to Duncan about it, and Duncan promised to return it, but he never got it back. (*Id.*)

As noted above, Doye's factual averments were made under penalty of perjury pursuant to 28 U.S.C. § 1746, and such declarations are admissible as evidence in opposition to a motion for summary judgment so long as "they are made on personal knowledge, set out facts that would be admissible in evidence, and show that the . . . declarant is competent to

testify on the matters stated." Fed. R. Civ. P. 56(c)(4); *see, e.g.*, *Hameed v. Pundt*, 964 F. Supp. 836, 840-41 (S.D.N.Y. 1997); *McNeal v. Macht*, 763 F. Supp. 1458, 1461 (E.D. Wis. 1991) ("when a pro se plaintiff properly executes . . . a declaration in conformity with 28 U.S.C. § 1746, the plaintiff's statement . . . is transformed from 'mere allegations' . . . into 'specific facts' as in an evidentiary affidavit."). Hence, there is admissible evidence supporting Doye's claims against Colvin, Duncan and Boyd.

Defendants' counter in their reply brief with facts that are of little use. (Doc. 121.) Colvin's post-event statement is unsworn and inadmissible at summary judgment. (Doc. 121-1.) Even if it was admissible, it more or less tracks Doye's version of the events but paints Doye as being more aggressive during the incidents than he initially let on. (*Id.* at 1.) At best, this shows that there is a jury issue. Also, defendants' citations to plaintiff's deposition are far from persuasive. (*Id.* at 2-10.) Doye freely admits he was riled up during the complained-of incidents. That much was clear from his complaint. His irritability is certainly a factor for the jury to consider, but it doesn't excuse what Doye

characterizes as the malicious application of force, beyond that which was necessary to subdue him, simply to punish him for not being immediately docile.[4] Finally, defendants suggest that the sling taken from Doye by Cpt. Duncan was not medically necessary based upon plaintiff's inability to recall whether he was prescribed the sling for any specific period of time (doc. 121 at 8), but it is undisputed that the sling *was* prescribed for an injury that had occurred within 5 or 6 weeks of the incidents in question, he had the sling in his possession prior to Duncan's acquisition of it, and Doye was *still* under treatment for that injury at the time of his September 30, 2010 deposition, many years later. (*See* doc. 122 (Doye depo.).)

Based upon Doye's showing, the Court is satisfied that there remains an issue for the jury. Hence, summary judgment is not warranted based upon defendants' assertion that Doye has failed to introduce admissible evidence supporting his claims against Colvin, Duncan, and Boyd.

---

[4] The deposition adds little else. (*See* doc. 122 (Doye depo.).) At best, it gives rise to some impeachment evidence.

Defendants also claim that they are entitled to qualified immunity. (Doc. 111-1 at 5-6.) They state that "there is no dispute that all defendants were acting within the scope of their discretionary function," and thus "plaintiff has the burden of establishing that -- at the time and given the specific circumstances of this case -- each defendant had fair and clear notice that their individual conduct violated clearly established law." (*Id.* at 6.) The Court will treat this as what it is -- a makeweight argument.[5] While there is no dispute that the officers were acting within their discretionary authority, the Court has already determined that Doye

---

[5] For government officials to be entitled to qualified immunity, they must show that they were acting within the scope of their discretionary authority when the alleged unconstitutional act occurred. *Wood v. Kesler*, 323 F.3d 872, 877 (11th Cir. 2003); *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (2002). Once government officials have established that they were acting within the scope of their discretionary authority, the burden then shifts to the plaintiff to demonstrate that qualified immunity is inappropriate. *Vinyard*, 311 F.3d at 1346. The Supreme Court has established a two part analysis for making this determination. *Dalrymple v. Reno*, 334 F.3d 991, 995 (11th Cir. 2003) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Viewing the facts in the light most favorable to the plaintiff, the court must first determine whether a defendant's conduct violated a constitutional right. *Id.* If a violation of a constitutional right is sufficiently alleged in the complaint, the court must then assess whether that right was clearly established at the time of the violation. *Id.* The Court, however, need not address those factors in any strict order. *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 818-822 (2009) (abrogating strict two-step analysis mandated by *Saucier*).

states constitutional claims for relief against Colvin, Duncan, and Boyd. (Doc. 6 at 8-15.) Moreover, those rights *were* clearly established at the time the alleged violations occurred. *E.g., Priester v. City of Riviera Beach*, 208 F.3d 919, 924 (11th Cir. 2000) ("That a police officer had a duty to intervene when he witnessed the use of excessive force [by another officer] and had the ability to intervene was clearly established in February 1994."); *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (a prison guard violates the Eighth Amendment's prohibition of cruel and unusual punishment when he employs force maliciously or sadistically for the very purpose of causing harm); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (deliberately denying an inmate necessary medical treatment is a clearly established violation of the Eighth Amendment prohibition against cruel and unusual punishment). Hence, Colvin, Duncan, and Boyd cannot invoke qualified immunity as a shield against Doye's claims.

Finally, the Court turns to Doye's claims against Warden Franks. It is well established that supervisory liability under § 1983 cannot be based upon theories of vicarious liability or *respondeat superior*. *Polk County v.*

*Dodson*, 454 U.S. 312, 325 (1981); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999). Instead, Doye must demonstrate either that the sheriff directly participated in the alleged constitutional deprivation or that there is some other causal connection between his acts or omissions and the alleged constitutional deprivations. *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003); *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1998) (per curiam). Causal connections form when a supervisory official implements, fosters, or tolerates an official or unofficial policy or custom under which the violation occurred. *Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986); *Fundiller v. Cooper City*, 777 F.2d 1436, 1442 (11th Cir. 1985). See *Tittle v. Jefferson County Comm'n*, 10 F.3d 1535, 1541-42 (11th Cir. 1994) (Kravitch, J., concurring) (plaintiff must show that the supervisor's knowledge amounted to deliberate indifference to the asserted harm or risk, in that his knowledge was "so pervasive that the refusal to prevent harm rises to the level of a custom or policy of depriving inmates of their

constitutional rights.").

Here, Doye alleged in his complaint that Franks allowed an "unconstitutional policy or custom of officers and Liberty County jail tasing and beating inmates." (Doc. 1 at 14.) He stated that while he was detained there "he witnessed beatings, and other inmates tased on different occasions that can be proven." (*Id.* at 15.) The Court allowed the claim to proceed based upon that assertion. Doye, however, has never offered any specific evidence to support that bare allegation, and he now acknowledges as much. (Doc. 123 at 13.) He pleads with the Court to permit additional discovery so that he may find such evidence.[6] (*Id.*) And

---

[6] Ever careful, Doye filed a "motion for continuance" asking the Court to permit him to conduct additional Rule 56(d) (formerly (f)) discovery before ruling on the motion for summary judgment. (Doc. 113.) He stated that he could not gather sufficient facts essential to counter the motion. (*Id.*) That has clearly not been the case as to any defendant other than Franks. He also suggests that defendants have withheld information promised during discovery, but he did not bring it to the Court's attention until after the discovery period had expired and defendants had moved for summary judgment.

The Court will not allow Doye to forage for more evidence this late in the game. His own testimony has adequately supported his position as to most of the defendants, so he has no Rule 56(d) need for such evidence against them. *See* CHARLES ALAN WRIGHT, ARTHUR R. MILLER, AND MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2740 (3d ed. 2010). And he has not shown any realistic possibility of uncovering any evidence that would keep Warden Franks in the case. Accordingly, Doye's motion for a continuance (doc. 113) is **DENIED**.

he still hopes to hang his hat on the fact that Franks "failed to remedy a wrong" when notified about the incident. Of course, after-the-fact intervention could not have prevented prior abuse. Moreover, simply putting a supervisor on notice is not enough to hold him accountable for the actions of his subordinates. Hence, the Court is satisfied that summary judgment is appropriate to Doye's claims against Franks.

**D. Sheriff Martin**

While Sheriff Martin was added to the case on May 5, 2009 (doc. 53), Doye, who paid the Court's filing fee and is *not* proceeding *pro* se, apparently took no steps to serve him. A plaintiff must serve process on a defendant "within 120 days after the complaint is filed." Fed. R. Civ. P. 4(m). If he fails to do so, "the court -- on motion or on its own after notice to the defendant -- must dismiss the action without prejudice against the defendant or order that service be made within a specified time." *Id*.

However, "[i]f the plaintiff shows good cause for the failure [to serve within 120 days of filing a complaint], the court must extend the time for service for an appropriate period." *Id.* The good-cause standard

can be difficult to meet, as it "exists only when some outside factor[,] such as reliance on faulty advice, rather than inadvertence or negligence, prevented service." *Lepone-Dempsey v. Carroll County Comm'rs*, 476 F.3d 1277, 1281 (11th Cir. 2007) (quotations omitted and alteration in original). But, "[e]ven in the absence of good cause, a district court has the discretion to extend the time for service of process." *Id.*; *see also Horenkamp v. Van Winkle & Co.*, 402 F.3d 1129, 1132-33 (11th Cir. 2005) (discretion properly exercised where statute of limitations threatened claim in a relatively small delay case). The Court thus directs him, within 14 days of the date this Order is served, to show cause why it should not dismiss his claim against Sheriff Martin for violating Rule 4(m).

### E. Conclusion

For all of the reasons explained above, defendants' motion for summary judgment (doc. 111) should be **GRANTED** as to Warden Franks and **DENIED** as to all other defendants. Plaintiff's motion for a continuance (doc. 113) is **DENIED**. Finally, Doye has 14 days from the date of this Report and Recommendation to show cause why Sheriff

Martin should not be dismissed from the case.

**SO REPORTED AND RECOMMENDED** this <u>22nd</u> day of March, 2011.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT of GEORGIA